Scoring is number 18-2215, Eko Brands, LLC v. Adrian Rivera Maynez Enterprises. Okay, Mr. Delgado. Good morning, Your Honors, and may it please the Court. Although there are six different issues on appeal, there are three specific ones that I want to speak about this morning for purposes of oral arguments. And they are as follows. The first deals with the claim construction of Claim 8 of the 855 patent and whether the district court committed error when it failed to include the preamble as a limitation of Claim 8. And the second and third issues will be with respect to the fee awards that the district court awarded during the case. Circling back to Issue 1, we believe that the district court did commit error when it failed to import the limitations of the preamble into the Claim 8 of the 855 patent. The test for that is simply that a preamble that is essential... The claim language uses terms from the beverage brewer device in such a way that it is essential to understand the terms of the claim. And in fact, other claim terms cannot be understood without reference to the beverage brewer. And that is the test for determining whether or not a preamble is limiting. I don't think you're addressing the point I was making. And that is that the language of the claim itself talks about for use with. The language of the preamble itself, for use with. So that would seem to suggest that a brewing device is different from the beverage brewer. So I agree that it says for use with, but I don't think that's the description of the preamble. The use of that phrase is not dispositive on the issue of whether or not the terms that come from the brewing device are essential or not essential. The fact is that without the terms from the brewing device, the terms from the claim itself just do not... Well, it certainly suggests that a brewing device is not the brewer itself. Doesn't it? I don't think so, Your Honor. I think if we look to the claim in its entirety and we look at the prosecution history of the child application that came from the 855 patent, where the examiner required the brewer elements to be in the claim itself, indicate that the brewer elements are necessary for purposes of this claim. So let me stay on that point. So if you wanted to claim this reusable capsule that you plug into the brewing device separate from the brewing device, how would you claim it? You still have to describe what the capsule is, its various structure, and how it's going to work in that brewer, don't you? I think you do, but I think you can do that in a way that doesn't incorporate some of the elements. For example, when you're talking about outlet probe receptacles, there are ways you can use by talking about the depth of an outlet probe receptacle without referencing the specific parts of the brewer, such as the needle and the specific needle that comes with a single-serve brewer. How? The point of this is not a generic capsule that can be used with any brewer device, but a specific reusable capsule that can be used with a specific machine. Don't you have to describe it with specificity, what that machine is and how they fit together? Yes, I think you have to describe the machine, but again, I don't think you have to use the terms from the machine in such a way that make them indispensable to the understanding of the claim, which again is what happened here. This argument baffles me. Is this what the willful infringement issue is based on? No, Your Honor. I don't think so. I think that's a separate issue. This wasn't your only defense to willful infringement. Correct. To willful infringement, that is correct. We had other defenses to willful infringement. This was part and parcel of the fact that we stipulated to direct infringement. If the brewer is not a part of the claim, which is what the district court held, we had to stipulate to direct infringement because of the container and the way that the container was claimed. It just baffles me how you could argue when everything about the language of this claim is talking about a brewing device as the invention and describes the basic structure or function of it and all the like, and only the time it mentions the actual brewer is just to say that it's for use with this. But it doesn't claim the brewer. Well, I disagree with that, Your Honor. I think if you look at the figures and you look at the specification, the brewer is mentioned throughout. And when you look at the child application of the 855 patent, it does claim a brewing system in its entirety. It claims the brewer and the capsule. And the reason that it does that is because the patent office required them to incorporate the terms from the brewer in order to achieve patentability. But this claim doesn't have a system claim. At least the representative one I'm looking at, Independent Claim 18, isn't a system claim. That's correct. But that's only because of a hiccup in the patenting process. In other words, the child... What do you mean it's a hiccup in the patent? I'm happy to explain that. If it was allowed as a single claim to the brewing device rather than a system claim, then that's what we have to look at. It was allowed only as a result of having a different examiner than the examiner from the child application. And the precedent from this court makes clear that the prosecution history of related patents is important. Do you have other arguments in this appeal? We do have other arguments, Your Honor, but not with respect to that issue. The second and third issue that I wanted to speak to are the fee awards. The second fee award was granted as a result of the district court granting ECHO's motion for non-infringement. And our position is that the district court's claim construction erred when it claimed that the passageway, or when it construed passageway from the 320 patent to be narrow. And that word narrow is contrary to a specific embodiment that is found in the patent. And by that I mean here the 320 patent. Yeah, but basically in terms of invalidity, your argument is that a passageway can be just an opening, right? Correct. Any kind of opening. Correct. That seems hard. It may be that the district court's construction is not correct, but it doesn't seem to me that a passageway is just an opening. Your Honor, if the district court's construction is not correct, then a grant of summary judgment based on that construction would not be correct. It would have to be reversed and remanded. Summary judgments were viewed de novo. We're not talking about fact-finding here. That's true, but nevertheless, if the construction is incorrect, then it would have to be reversed for further fact-finding. Why? We can look at the record and see whether under the correct construction, summary judgment was properly granted. The district court's construction of passageway was based on its own interpretation. It was not offered by either party. And with respect to whether or not it can be only an opening, the patent specification uses the words opening and passageway interchangeably, which is something that ECHO admitted in one of its claim construction briefs. They moved away from that position here on appeal, but judicial estoppel precludes them from doing that. The court construed passageway as a narrow space of some depth or length connecting one place to another. The district court, yes. The district court did. Yes. And is there anything in the specification regarding the required depth or length or narrow space? Your Honor, the only length that is discussed is described in mathematical terms. So it describes the length as 5 millimeters wide and having a variable length anywhere from 1 millimeter to 20 millimeters. So our position is that by saying narrow, it limits the passageway to the 20 millimeter length, whereas a passageway that has 5 millimeters in width and only 1 millimeter in length is not by definition narrow. And that's why we believe that that was a remnant. The third argument that I'd like to talk about is the fee award with respect to the obviousness determination. In other words, that the 320 plan was declared obvious and valid, and the district court awarded fees in connection with that. ECHO moved for summary judgment on the issue of obviousness. Judge Lasnik denied that motion for summary judgment and said that there was a triable issue of fact on the issue of obviousness and we had to go to trial. So we did go to trial. After trial, Judge Donahue, who tried the case, issued a fee award on the issue of obviousness, concluding that we didn't put forth a strong enough defense. We have cited cases that all stand for a very simple proposition, that if your position is strong enough to avoid summary judgment, then it cannot possibly be so sanctionable and frivolous as to merit an award on the back end, essentially. I'm not sure that the cases stand for that proposition. They certainly stand for the proposition that the denial of summary judgment is something that needs to be taken into account. But which case says that the denial of summary judgment includes a fee award after trial? So the checkpoint case says that where there is no misrepresentation, a party can rely on denial of a motion for summary judgment. Can rely on, but it doesn't say that it includes a fee award. Fair enough. A party can rely on a denial of motion for summary judgment in connection with a fee award. But here, the fee award was made without consideration of the denial on the motion for summary judgment. What do you mean it was made without consideration? The judge certainly knew that summary judgment had been denied. But there was no analysis of how that denial of summary judgment played into what was presented in trial. And keep in mind, there's two different judges here. So the award, to the extent that one was- Sure, but they're both the trial court judges. They get a look at the record. They get to make a decision within their discretion, and we review it for an abuse of discretion. And we assume they knew what happened. Okay. Well, if you make that assumption, that is certainly within the purview of this court. But again, there was no indication in the order that that actually occurred. Did you argue that to him, that there should be no fee award because of the summary judgment denial? I believe we did. I can't remember specifically if we did or not. I apologize, Your Honor. You would be well off to be familiar with that. I would. And when I sit down, I'll look at that again. Can you address the issue on the jury instruction? Sure. I was going to do that in rebuttal, but I can do that now. Your Honor, in order for ECHO to prevail on its argument that the jury instruction was erroneous, they would have to show that the instruction as a whole failed to capture the law correctly and show harm. In this case, we don't think they can show harm for a couple of different reasons. Number one, the jury instruction- Can you address whether the instruction is correct first? Sure. I mean, I know you pulled it largely from a model jury instruction from the Federal Circuit Bar Association, but it seems a little problematic to me that it's directing part of the standard to the jury to determine whether the jury thinks it's worthy of punishment. That seems to me to go to the ultimate question of whether enhanced damages should be awarded, which is what the district court should decide, right? I disagree with that. Okay. You disagree with that? I mean, in practice, the district courts have been awarding enhanced damages. I think if you look at- I mean, it's not really worth having a discussion with you if you can't read HALO and recognize that the ultimate question of whether enhanced damages is a question for the judge. Questions of fact, like willful infringement, can go to the jury. But the ultimate question of whether or not to award enhanced damages is always for the judge, even if he asks for an advisory opinion from the jury. Is that not a correct statement of the law? Your Honor, I think HALO has to be read in context with Feltner. Okay. And Feltner says that statutory damages, which are punitive in nature, a civil litigant can get a Seventh Amendment jury trial on statutory damages. If enhanced damages are there to punish a civil litigant, just as statutory damages would be, then one would surmise that enhanced damages can also be a jury issue. To circle back to the question about whether or not the constriction was correct, we believe it was because when you look at the words egregious, willful, wanton, malicious, conscious disregard in HALO, these all appear together basically in two sentences right next to each other. And as a result of that, we believe that there is synonymity between these words. But that's only true if the jury gets to decide all of those questions, not if one of them is for the district court. No, I think that there can be synonymous without that determination. In other words, if willfulness and maliciousness and egregiousness are all synonymous, then all of those can make their way in. And punishment. Because punishment is the sentence that's problematic here. Because that seems to me to be the ultimate purpose of enhanced damages, which is to punish the willful infringer. And that question, just assume I'm right. I'm tired of arguing about this. Just assume I'm right that that question can only be decided by the district court. Isn't having that question about punishment in a jury instruction problematic? If I assume that you are correct, then yes. The worthy of punishment language might be problematic. But when we read the entire instruction as a whole, it becomes harmless error. Particularly because this court has previously – The district court didn't seem to think so. I understand that that's what the district court said. But when you look at the facts of the entire – Well, that's not our call, right, though. The district court is the entity that has the discretion to determine in the first instance whether enhanced damages are available. And if he said he could have considered them and might have considered them absent this finding, then that's a call for him to make, not for us to look at the record and substitute our judgment in the first place, is it? No, I think this court can determine whether or not, based on the record before it, that the error would or would not have been harmless. Part of your problem here is it seems to me you've got the wrong standard for harmless error in your brief. What you argue is that the jury could have found that this was not willful. And that may be, but that's not sufficient to show harmless error. You have to show that the evidence was such that the jury had to find that it was not willful. So the whole context of your argument is not correct, it seems to me. Well, Your Honor, I respectfully disagree because if you look at the four factual – Wait, wait, wait. You disagree with me about the standard? The standard is – No, not on the standard, on what the evidence showed. Okay. All right, all right. Well, I think we're out of time here. We'll give you two minutes for rebuttal. Thank you. Mr. Weld. Let's – good morning, Your Honor. May it please the Court. Yeah, good morning. Let's turn to the willfulness instruction here. Yes, Your Honor. And it does seem to me on the face of it that it allows the jury to find willful infringement if there was – if the infringement was deliberate, right? It does allow that to happen. Your Honor, you're correct. It does say among examples, malicious, deliberate, consciously wrongful, or done in bad faith. But the problem is the inclusion of the only the most egregious behavior standard before basically tells the jury that you have to find a heightened form of willfulness, which may or may not be deliberate. I'm not sure that's true because it says only the most egregious forms of behavior, instances of which are deliberate. So the jury is told you have to find it's egregious, but deliberate infringement is egregious behavior. So it seems to me a little hard to read that particular part of the instruction as saying that you have to find it's egregious. Really, in the abstract, what it seems to be saying is you have to find it's egregious, and deliberate infringement is an example of the kind of egregious behavior we're talking about. Your Honor, the problem is when you predicate whether a finding of one of these degrees of willfulness on being egregious, you're immediately casting it in the light of a heightened standard. This Court has long held that willfulness, there's a spectrum of standards. It can be as simple as deliberate or intentional, or it can be a heightened standard of malicious or done in bad faith. Here, this jury instruction specifically said egregious, which cast it in the light of the heightened standard. But that's not all. Counsel suggested that this need to be looked at as a whole. Well, then what do you do when you have this additional issue of especially worthy of punishment? Because that takes it out of a whole different realm. And from the beginning, HALO decoupled willfulness, which is a jury instruction looking for the subjective. We understand. We understand. Okay. Your Honor. Let me ask you this. If that especially worthy of punishment line were in there and all we had was the last sentence about reserved for egregious behavior and has that whole list of examples, which includes merely deliberate, would there be a problem here? I think there would, Your Honor. HALO mentioned the word egregious six times, never in the context of defining willfulness. It was always in the context of what constitutes an exceptional case. There's two things here going on. We have willfulness, subjective intent, whether they knew or should have known or acted with reckless disregard. That's something for the jury to decide. When determining an exceptional case, which applies to 284 enhanced damages, which applies to 285, that is the province and always has been of the judge. You can ask the jury to see whether this case stands apart from the others. This likely was the jury's first instance of ever seeing the case. That's the province of the judge who have seen many cases and to decide, does this case stand out different from others? So your view is that last sentence is also problematic because whether something or not is egregious behavior is a question for the judge as well. It is, Your Honor, because it's then you go back and look at the read factors and nine different factors, one of which is willfulness. Unfortunately, over the years, there have been many decisions which have caused confusion with the court. In 2005, perhaps the best example of that was the Sisk v. Munsprizer Court, 408 F. 1374, where this court said willfulness requires a showing that the totality of the circumstances evince the egregious conduct that constitutes willful infringement. With due respect, that's hard to fathom. And what that's led to is that over the years, the courts have used as a shorthand, district courts as a shorthand. What case do you have from our court after HALO that says that referring to punishment in a jury instruction or egregious behavior in a jury instruction is harmful error? So I don't have one that says harmful error, but here's what I have, Your Honor, and I canvassed the cases. We have the Western Geico case, which talked about the fact that the patentee need only prove suggestive willfulness alone. In other words, it decoupled in that instance, and it was after HALO and spoke to HALO and said you have willfulness, and that's different than enhanced damages. And then we have the Arctic Cat case, 876F1350 in 2017, where this court explained under HALO willfulness can be found when there's a subjective willfulness. Nowhere in that case did they indicate an express or implied component of egregiousness. That's what we have. That's all true, but I guess what you're saying is that we don't – this is an issue of first impression as to whether including references to punishment and egregious behavior in a jury instruction is harmful error. I think it is, Your Honor. Unfortunately, the imprimatur of the Federal Circuit Bar Association for several years has been used, and that's all that we as litigants and courts have to rely upon because we don't have other jurisdictions. But here's what the result of that has been. Within a span of two months – Did you propose a different jury instruction on this issue? We did, Your Honor. And it didn't include – it wasn't the Federal Circuit Bar. It was not. We specifically struck out language. We started with the Federal Circuit Bar, and then the court – we raised the objection, and the court then asked for briefing. And you originally agreed that the instruction was fine. Well, Your Honor, we preserved our objection. There's been no question about that. The judge allowed you to backtrack and change your position. Well, and – but I want to talk about how significant this is, and even if it is an issue of first impression, it's one that needs – the court needs to take up. We cited in our case the Erickson District Court case from Texas. We cited the Ballenge case from Delaware. And then our case. Within the span of two months in 2018, three different courts struggled with this. Judge Payne in the Erickson case at first had a jury instruction very much like the Bar. He says, punishment egregious to find willfulness. And then after Arctic, he came back and said, all right, I understand now. It seems that we do need to decouple willfulness, which is – The issue here – I mean, why don't you just assume that we're not going to bless this instruction? We're not going to say this is the way to do it. The question is whether we need to set aside the jury verdict and have a new trial because there was some language in here which was undesirable, whether we have to find that that's harmful error and start all over again, which courts are reluctant to do. That's why there's a harmless juror doctrine. Yes, Your Honor, but this case is one that mandates this. I couldn't probably have drafted facts that are more compelling to show that this was harmful error in this situation. Well, you could have if it had happened this way. Let's look at the – if you look at the first paragraph of the instruction, and that's the one that contains the wording we're talking about, especially worthy of punishment, reserved for egregious behavior. But that's followed by a second paragraph that enumerates different instances, which all of them seem to me to be correct or proper. So assuming that there's some prejudicial effect as a result of the first paragraph of instruction number 40, isn't that cured in any way by the second paragraph that sets out a different instruction to the jury? I'll be very precise about the answer to your question. Is it cured in any way? I think that it helps, but do I think that it cures the prejudice caused by the first paragraph's requirement of punishment and egregious conduct? No, I do not. But that second part is fine, right? I mean, that would not be legal error. Yeah, the second part is fine. That's correct. But unfortunately, taking it as a whole, it is legal error because it tells the jury, putting them in the place of the court, you have to compare this to others and find that this is especially egregious and especially worthy of punishment, all things of the province of the judge. And in this case, Your Honor, the district court specifically recognized that if this was bad law. Now, unfortunately, the district court characterized the Bar Association instruction as law when it isn't. It's an attempt by the bar to be helpful. But he says if this is bad, this was not harmless error. And we know this. We can never get inside the minds of the jury. But here we've gotten about as close as we can. The jury, after five and a half hours of deliberation, came back and said, we agree to everything except this one question. And we're hung on that. And we have very divergent views. And the response to the judge was, go back and read that instruction. And when they did, after what was obviously a close call, they came back. Well, in this situation, as this court recognized, the standard for harmless error is it's harmless if there's no way that the jury could have found otherwise. Here, we know from the jury's own questioning that the jury very much could have found otherwise. It was teetering on a razor's edge. That was because of the instruction. It could be that they were debating whether the evidence was sufficient to show willfulness under a correct standard, which is the second part of this instruction. We don't know. Your Honor, I think as you noted earlier, who is in the best position to ascertain whether or not it was harmless error? It seems like the district court judge that actually put forward that instruction. And that judge found clearly, if this was wrong, if the statement of the law is wrong, then I don't believe it was harmless. Moreover, if that was wrong, and this is remanded as it should solely for the determination of willfulness, then it will reconsider at that time the exceptional case for enhanced damages and attorney's fees. This is perhaps, as I said, the most classic case, scorched earth litigation. All the reasons that the judge looked at for exceptional, he was teetering on the edge of granting more award of sanctions or enhanced damages, but for this willfulness finding, because this was based on an inaccurate statement of the law and the jury was teetering on an edge, I don't see how it can be considered harmless. And even though the court is loath to remand in this case to affirm everything else, which was proper, and I'm happy to talk about the other issues that were raised, they seem pretty pedestrian compared to this, but this case needs to be remanded for a jury determination of solely willfulness, and after that, a reassessment by the court within its purview about whether or not it is an exceptional case, and further, that enhanced damages and additional attorney's fees may be warranted in this case of scorched earth litigation by arm that finally needs to be stopped. Counsel, let's go back to the claim construction issue, okay? On page 12, this is appendix 12, page 12 we have the district court's opinion, and at the very end, the court says, the court finds that one skilled in the art would, in light of the intrinsic evidence, construe passageway as a narrow space of some depth or length connecting one place to another. Where in the intrinsic evidence do we find any reference, if not a limiting requirement, that a passageway be narrow, that there be depth and length to that passageway? Your Honor, it's in the patent. Look at the figures. This is something I want to correct. The figures themselves show the difference between an opening, and I'll refer you to the capsule itself, which has a lid. There's an opening, which is a flat with no depth or length. Figure one shows only a simple hole. It doesn't say narrow, and it doesn't refer to depth or length, just a hole. Figure four, I believe, shows a hole in the top, and it shows the passageway where the needle goes in the bottom, which has depth or length, and it must have depth or length to allow for the needle. See, there is a difference in how the terms were used. Opening, as this court recognized, was not used the same as passageway, and this judge, relying on the intrinsic evidence and how it was used, where you say an opening in the top, which is flat, does not have depth, versus a passageway. Where in the court's opinion does it say that? All it says is that it relies on the intrinsic evidence. So I understand, if I understand correctly, that you're critical of the district court because it didn't refer to figure four, which shows the depth or the length or something. That may be the case, but it still was present in the patent that the court looked at, just because the patent didn't point to specifically figure four. So we can't import a limitation out of a single embodiment, correct? That's correct, but every embodiment that they talked about, even when they get down to defining the millimeters, how different it is, every single time they talked about the passageway, they talked about it being configured to receive the needle. In other words, something that had depth and length. Every time they talked about the opening on top of the lid, they did not talk about something with depth or length. So they used opening different than passageway. Why does the opening to receive the needle have to have some, let's say, narrowness to it or even depth? Why can't it just be like through a wire mesh, for example? Well, it has to have depth or length because they say that it prevents the needle from penetrating the brewing material that's inside. So in other words, it has to have some kind of a depth to be able to act as an offset before the needle from piercing the contents of this container. So that's the difference between that and the opening at the top where the needle is meant to go in and pierce the container. If we were to sustain the determination of invalidity of these claims, this infringement issue only affects the attorney's fees? You're right, Honor, and that's the other thing. The obviousness, which the counsel, just like you did below, has no time dealing with at all because you can't overturn the jury brining of the pieces and the court's ultimate determination. The claims are going to be invalid, just like this court held last year in the Federal Circuit about Claims 5 and 18. So it's a moot issue. But beyond that, it still does because of the way that they prosecuted those, notwithstanding the fact that they should have known that they were invalid. This court held that the independent claims were invalid, and they pressed the issue admittedly simply to keep the injunction from the ITC alive against our client, precluding them for more than a year. They kept that alive all the way to the time of trial. They didn't participate in the special jury and verdicts. They spent little time. The fees for the obviousness question, right? Yes. Not this fee issue. Not the fee issue related to infringement. Right. There are the two fee issues, one related, but they didn't challenge the underlying merits of that. They only said it rises or falls with whether or not this court finds that there was non-infringement. If we were to reverse on this claim construction issue on passageway, what does that do to the summary judgment decisions? Well, they still – the claims are still invalid. It does nothing with those because the claims 8 and 19 were still found invalid after trial by the jury. And so the issue with respect to the claim fees having to do with obviousness pertains to that. This would have no impact. It's not like – The obviousness becomes more difficult under the court's construction of passageway. I'm sorry? The obviousness argument becomes more difficult, not less difficult depending on the passageway construction. Actually not because the only things that were challenged on the obviousness argument were the brewing chamber element and the lid element. Passageway was not even at issue with respect to the obviousness. But non-infringement on the 320 patent, that was granted based on construction of passageway. Correct. Non-infringement was based on passageway. So if we reverse on the construction, we'd have to reverse on that. And the same is true with the 320 patent. Attorney's fees relating to non-infringement. No, so to be clear, Your Honor, on the first one, the court denied arms motion for non-infringement because of the passageway issue. That's true. On obviousness, that's the one that went all the way through trial, and the court found there that there was obvious, and then it awarded attorney's fees because of the manner in which it had been pursued, even though it was a meritless case. Two different issues. Okay. We seem to be out of time. All right. Thank you, Your Honor. Mr. Delgado. Thank you, Your Honor. I realize I went over time, so I'll try to be brief. With respect to the question that was raised, what happens if you reverse on the construction of passageway in the 320 patent? As I alluded to before, if you reverse that construction, then the motion for summary judgment that was granted in ECHO's favor of non-infringement would also have to be reversed. Well, not necessarily. If we say that the construction was wrong, but still a passageway is not an opening and that the summary judgment record showed only an opening. If this court were to substitute a construction of that nature, then I agree with Your Honor on that. Nevertheless, with respect to whether or not a passageway is or is not an opening, at page 16 of our reply brief, we pointed to a couple of different points within the specification that highlight that the words opening and passageway were used interchangeably for the bottom part of the receptacle. And those are at column 5, lines 22 through 28, and column 6, lines 53 and 55 of the 320 patent. And so there is room there, or not room, but there is wording in the specification that shows that those terms are used interchangeably. So where? Show me that again. So, Your Honor, in the 320 patent? Yep. Columns 5? What page is it? Line 22 through 28. Page 90. 22 to 28. Yeah. That doesn't use the word opening there. And then, right, that's the passageway. And then you compare that to column 6. Yeah. Line 53 to 55. Wait, but that's a different opening. It's not the passageway or opening that we're talking about here, right? It's a different figure, but in both cases it's talking about the ---- No, but it's an outlet, right? To allow for the outflow of the beverage. That's a different opening or passageway than the one we're talking about here, right? Well, if you look at column 5 where it talks about passageways ---- Answer my question. Isn't that true? In column 6, they're not this opening, which you're referring to in lines 54 and following, is a different opening than we're concerned with about the definition of passageway. I don't believe it is, Your Honor. I think it's ultimately both are referring to the hole at the bottom where the fluid outflows the capsule. There's multiple, as we've just seen, there's multiple references to passageway in this pen, but I don't see any of them that reference to narrowness, depth, or specific length. Am I missing something? No, Your Honor, that's exactly correct. And, in fact, when you asked the question, why does it have to be narrow to accept the needle, I would submit that it does not have to be narrow to submit the needle. It has to be of a certain width to accept the needle, but it doesn't have to be of a certain length. And, therefore, it doesn't have to be narrow. It could be quite wide and still accept the needle. On column 9, lines, let's see, 6 or 7, it says, when the reciprocal has at least one passageway that provides fluid flow from one interior of the receptacle to the exterior. And I find similar passages that way, but none of them seem to, none of them do require or even mention narrowness, for example. Yes, I think that is correct, Your Honor. But what does it matter? If we were to reverse on this claim construction, what does that do to the rest of the case? It seems to me that your answer to Judge Eudakis was that at the end of the day it doesn't matter. Well, no. Our position is that if you reverse on that construction, that would lead to a reversal of the grant of summary judgment of non-infringement, which would then lead to vacating the first fee award because that fee award was granted as a prevailing party. And, therefore— Does that affect invalidity? No, that would not affect invalidity. Okay. I see that I'm over again. Thank you. All right. Thank you, Your Honor. I thank both counsel and cases. That concludes today's hearing.